CASE 4—INDICTMENT—JUNE 25.

# Ferrill and Bullard vs. Commonwealth.

APPEAL FROM THE LIVINGSTON CIRCUIT COURT.

1. F. and B. stole a horse in Tennessee, and brought it to Livingston county, Kentucky, where it was disposed of by one of them for the benefit of both. F. had possession and chief control of the horse, but B. aided in the larceny, and was in Livingston county after the taking and before the sale of it. *Held*—That both were subject to punishment in this State, under *sec.* 3, *art.* 11, *chap.* 28, *Rev. Stat.* (1 *Mass.*, 115 ; 3 *Conn.*, 186 ; 11 *Ohio*, 436.)

2. Although the trial and conviction here would not bar a prosecution in Tennessee for the original taking, the offenders are nevertheless punishable for the violation of our laws, in bringing the stolen property within their jurisdiction, with a felonious intent. "The common law knows no such plea, in defense of a prosecution, as liability to punishment elsewhere." (*Bish. Crim. Law, sec.* 599.)

J. T. HANDLIN, for appellants, cited *Crim. Code, sec.* 229 ; *Tenn. Code, secs.* 4677, 4680, 4686 ; 1 *Rev. Stat.*, 389 ; *Whart. Amer. Crim. Law, pp.* 656, 657 ; 2 *Russel on Crimes*, 184, 185 ; 2 *Johns.*, 477.

Ferrill and Bullard vs. Commonwealth.

J. M. HARLAN, Attorney General, for Commonwealth, cited 2 *East's Cr. L.*, 772; 2 *Johns.*, 477; 11 *Wend.*, 129; 5 *Binney*, 5; 1 *Mass.*, 115; *Tillass.*, 14; 3 *Conn.*, 186; 11 *Ohio*, 436; 11 *Verm.*, 650; 1 *Bish. Cr. L.*, sec. 597; 2 *Russ. on Crimes*, 116; 14 *Ga.*, 422; 18 *Ala.*, 541; 2 *Leigh.*, 708.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Appellants were indicted, tried, and convicted, in the Livingston circuit court, for horse stealing. It appeared from the evidence that Shemwell, the owner of the mare, resided in Stewart county, Tennessee, and that the mare was taken from him at his residence.

Appellants, at the time of the taking—night of February 10, 1864—resided in Illinois, but had recently lived near Shemwell's, in Tennessee; and had been seen on their way to their old neighborhood a few days before the taking, and in ample time to have reached it before the taking.

Shemwell pursued, and found appellants in Pope county, Illinois, but found the mare in Livingston county, Kentucky. Ferrill seems to have had the possession and chief control of the mare, and actually traded her in Livingston county; but Bullard acted in concert with him in devising and executing the plan by which the mare was obtained. After the evidence was closed, appellant's counsel moved " to stop the trial and discharge the defendants, upon the ground that the evidence showed that the offense was committed out of the jurisdiction of the State of Kentucky," which was overruled, and exception taken.

At the instance of the Commonwealth's Attorney, the court gave the following instructions:

" If the jury believe from the evidence that both the *defendants*, jointly, feloniously took and carried away the mare of Allen J. Shemwell in the indictment mentioned, and at the time of the taking the said Shemwell and mare were both in the State of Tennessee, and the taking took place in that State; and both of the defendants, in order to carry out their felonious intent, brought to and had in their joint possession the said mare in Livingston county, before the time of finding the

indictment, then the law is against both the defendants, and the jury will so find, and fix the time, in their verdict, of confinement in the State penitentiary, at not less than four nor more than eight years."

"Should the jury believe from the evidence that said mare was so jointly stolen in the State of Tennessee, by the defendants, and that she was brought to Livingston county by the defendant Ferrill, to be disposed of for the use of both defendants, and he, in pursuance of the original felonious purpose, by an agreement between both the defendants, had said mare in Livingston county, and sold or disposed of her for said purpose, in that case the law is against both, and the jury will so find."

"But should the jury believe from the evidence that said mare was stolen, as before stated, in the State of Tennessee, by both the defendants, jointly, and they with the mare were on the way from there to Livingston county, and before their arrival in said county the defendant Bullard had abandoned the possession of said mare on his part and the same was in the possession of Ferrill in Livingston county, but not in pursuance of an agreement with the defendant Bullard, then the law in that case is against defendant Ferrill, but in favor of the defendant Bullard, and the jury will find accordingly."

"Should the jury entertain a rational doubt upon the whole of the law and evidence in the cause as to the guilt of both defendants, they will acquit both; or, should they have such doubt as to one of the defendants, but none as to the other, they will acquit the one as to whom they entertain the doubt, and convict the one as to whose guilt they have none."

And refused the following instructions asked by the appellants' counsel:

"If the jury believe the horse was taken in another State, the passing through this county is not such an offense as would make them guilty of horse stealing; and unless there was a separate taking from that, in a different State or county, they must acquit the defendants."

"If they find from the evidence that the original taking of said horse by defendants was in Tennessee, they should acquit them."

" If they believe from the evidence that the original taking of the horse mentioned in the indictment was not committed in this State, the defendants are not guilty of horse stealing in this county, and they must acquit them; unless they believe from the evidence that the defendants parted with the possession of said property, and afterwards, in this county, feloniously obtained possession of said horse from the possession of another, without their knowledge or consent."

We are now called upon for the first time to decide whether, if a larceny be committed in a sister State, and the article stolen be brought into this State by the felon, and here disposed of, he is subject to be prosecuted, tried, convicted, and punished in this State?

By our Revised Statutes (*section* 3, *article* 11, *chapter* 28, 1 *Rev. Stat.*, 389), it is provided : " If any person shall steal a horse, mule, jack, or jennet, he shall be confined in the penitentiary not less than four nor more than eight years."

Have appellants violated this statute ?  For if not, they are not subject to punishment by the laws and tribunals of this State, but can only be surrendered upon proper proceedings as " fugitives from justice" to the proper authorities of Tennessee.

This is a grave and vexed question, upon which there is a contrariety of authority.  The rulings of the English courts seem to have been uniform, that, whilst the felonious taking the personal goods of another in one county, and asporting them to another within the same sovereignty, was a continuation and renewal of the offense in each county to which they were asported, and the felon liable to punishment in either, yet where the original taking was within the jurisdiction of another sovereignty, the asportation to some county in England, was not an offense against the laws of England for which the felon could be tried; that it could not be a continuation and renewal of the first offense.

This doctrine seems to have been adhered to in the earlier decisions of some of the American States.

In *The People vs. Gardner* (2 *Johnson*, 477) the New York court held, that as the horse was stolen in Vermont, " the

offense does not continue and accompany the possession of the thing stolen, as it does in the case where a thing is stolen in one county, and the thief is found with the property in another." "The prisoner can only be considered a *fugitive from justice* from the State of Vermont."

To this same effect was the decision of the supreme court of Pennsylvania, in 1813, in *Simmons vs. Commonwealth*, (5 *Bin.*, 5.)

But in *Commonwealth vs. Jno. Cullins* (1 *Mass.*, 115), the supreme court of Massachusetts held "that stealing goods in one *State*, and conveying stolen goods into another State, was similar to stealing in one *county*, and conveying the stolen goods into another, which was always holden to be a felony in *both* counties." And such was the decision in *Commonwealth vs. Andrews, Tillass*, 14.

The supreme court of Connecticut (Judge Peters dissenting) said: "It has never been supposed that courts in Connecticut could take cognizance of a crime committed against the laws of a neighboring State; but the felonious taking and asportation of property from an adjoining sovereignty into this, has been considered *as a repetition of the crime;* the continuance of the original trespass being a renewed wrong, and, coupled with the felonious intent, a larceny, equally with the first taking." * * * "On this theory the caption of property within a neighboring jurisdiction, *annimo furandi*, is a violation of its laws, amounting to larceny; and the bringing it into Connecticut, with the same intent, is a breach of our laws—a crime committed against this sovereignty." (*State vs. Ellis*, 3 *Conn.*, 186.)

The majority of the supreme court of Ohio so held in *Hamilton vs. State* (11 *Ohio*, 436).

It may be that where a theft, being committed in one county, and the offender convicted in another, to which he may have taken the goods, within the same jurisdiction, would bar any proceedings in the first county, which it certainly could not where the original taking is in one State and the conviction in another State.

Yet this cannot be a sufficient reason why the laws of Ken-

tucky shall not be vindicated, if they have been violated, though the offender may be liable to punishment by another sovereignty for the violation of its laws, in the original taking. It must be conceded that the trial and conviction in Kentucky could not be pleaded in bar of a prosecution for the original taking in Tennessee.

The proceedings and punishment in the State of the original taking may be very different from that of Kentucky. Kentucky cannot punish for the violation of the criminal laws of Tennessee. All she can do is to surrender, as a fugitive from justice, such persons as violate the laws of other States and are within her jurisdiction; yet, if her laws are violated, she will not stay the punishment because the offender may have violated the laws of another State, and be liable to punishment by such State.

In answer to the argument that the offender would be. liable in such cases to be punished by two States, Judge Sedgwick, of the supreme court of Massachusetts, in *Commonwealth vs. Andrews, supra,* very properly said: "And wherefore should he not? For myself, I feel no such tenderness for thieves as to desire that they should not be punished wherever guilty. If they offend against the laws of two States, I am willing they should be punished in both."

The language of our statute is comprehensive: "If any person steal a horse. he shall be confined in the penitentiary." Not that the original taking shall be from a citizen of Kentucky, or within her boundary, but that if any one shall do such act, within the State, as may deemed stealing from any one, he shall be punished.

The analogies of the law strongly indicate that our courts may inquire as to the ownership of property wrongfully in the possession of another in this State, and with what intention such possession is had, no matter where the rightful owner may reside, nor where the possession may first have been obtained.

If a felonious possession is obtained in another State, the felon must not violate our laws by bringing the stolen property within their jurisdiction, with a felonious intent to appropriate

it to his own use; and if he does, the crime against our laws is complete, and he liable to its punishments; for, as said by Bishop, "the common law knows no such plea in defense of a prosecution as liable to indictment elsewhere." (1 *Bish. Crim. Law, sec.* 599.)

Notwithstanding the mare may have been taken in Tennessee, the right of property and of possession was in the owner, Shemwell, even in Kentucky; and the depriving him feloniously of this right was an offense against our laws every minute it existed, and a renewal in every county of the State to which the property may have been taken.

Whilst there are similar analogies between two counties and two States, yet in some things the analogies fail. In respect to two counties, a complete offense must be made out in the county of the prosecution; and so is the law as to two States. But as regards two counties, the crime in the first locality may be shown as the foundation for the crime in the second; whilst what was done in the first of two States can only be shown to ascertain the legal relation which the party accused sustained toward the property, after he had passed over into the second. (1 *Bish. Crim. Law, sec.* 59, *p.* 598.)

"Our courts cannot punish offenses against a foreign government; nor, therefore, take cognizance of such offenses. Neither, on the other hand, can a man be heard to excuse himself for a criminal act here, by alleging that he did the same thing elsewhere. And thus, we conclude, that a man can neither be punished nor escape punishment for larceny here, by reason of his having committed it in another State." (1 *vol. Bish. Crim. Law, sec.* 595.)

"Always where a man has with him property in this State, we may look into the legal relation he sustains to it, if he has stolen it in another State. He has not the right even to the custody of it here; and the rule in larceny is, that when a man having in his mind the intent to steal, makes any removal or carrying away of personal property, to the custody of which he has no right, he commits the crime." (*Same, sec.* 596.)

It has been well said by an eminent author on criminal law, that the proposition that a man is to escape punishment for the

violation of our laws, because he first violated the laws of a foreign country, is absurd and mischievous in its practical ap-  plication.   When a man is found here *with property*, our courts will inquire after its owner, equally whether the owner be a foreigner or citizen, present or absent.   Our courts will protect the rights of property, whether the property is in the owner's actual possession or wrongfully in the possession of a felon. (1 *Bish. Crim. Law, sec.* 597–*a.*)

The second instruction given is erroneous, substantially meaning, that if the two combined feloniously to steal the property in Tennessee, with the intention that one should bring it to Kentucky and sell it, and if, in pursuance to such original understanding, Ferrill brought the mare to Livingston county and sold her, Bullard was liable.

No offense perpetrated in Tennessee could be regarded here further than to ascertain the legal relation of the possessor with the property ; therefore, no matter what the understanding in Tennessee was, Bullard could not offend our law without being here himself; but as he was in Livingston county after the taking and before the sale of the mare, this operated no injury to him ; therefore we cannot reverse for this error. The other instructions given are right, and no error was committed in refusing instructions.

Judgment affirmed.