RACHEL LEE PEAPER AND HARRY LEROY LOWE, SR. *v*. STATE OF MARYLAND

[No. 232, September Term, 1971.]

*Decided January 26, 1972.*

The cause was argued before THOMPSON, MOYLAN and GILBERT, JJ.

*Naji P. Maloof* for Rachel Lee Peaper, one of the appellants and *Graydon S. McKee, III,* for Harry Leroy Lowe, Sr., other appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, John C. Hancock, State's Attorney for Charles County,* and *Louis P. Jenkins, Assistant State's Attorney for Charles County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

This case arises out of three separate thefts of large pieces of construction equipment from job sites in Prince George's County between May 2, 1969, and September, 1969, and the subsequent recovery of those pieces of equipment in Charles County on July 25, 1970.

William C. Drury, the President of the Del May Company, Inc., a Maryland corporation doing construction

work, testified that sometime on or about May 2, 1969, there was missing from a job site in Prince George's County, an Ingersoll Rand 125 Air Compressor, which Mr. Drury valued at between $2,000 and $2,400.

Edward E. Nieman, the Office Manager for the Martin and Gass Construction Company, a Maryland corporation, testified that in September, 1969, there was missing from a job site in Prince George's County, a blue Ford farm tractor with a "street broom attachment." Mr. Nieman placed a value on the tractor of approximately $2,000 and indicated that the tractor had been rented from a Fairfax Equipment Rental Corporation, which was owned by the Martin-Gass Company.

Joseph Julian Dimeglio, the Secretary and Treasurer of the Dimeglio Construction Company, a Maryland corporation, testified that on or about July 17, 1969, there was missing from a job site in Prince George's County a "530 Case Back Loader," belonging to the corporation. Mr. Dimeglio placed the value of the equipment at $10,-000.

On July 25, 1970, Maryland State Troopers, pursuant to a search and seizure warrant, seized all of these items of equipment from the 25 acre farm in Charles County occupied by the appellants, Rachel Lee Peaper and Harry Leroy Lowe, Sr. After their joint trial in the Circuit Court for Charles County before Judge James C. Mitchell, sitting without a jury, the appellant Lowe was found guilty under the count charging grand larceny on each of three indictments and the appellant Peaper was found guilty of receiving stolen goods of the value of $100 or upwards under a separate count on each of the three indictments.

The first point raised by the appellant Lowe on this appeal is that his indictments charged him with larcenies perpetrated in Charles County, whereas the evidence showed the respective larcenies to have taken place in Prince George's County. He, therefore, urges that the trial court had no jurisdiction to try these cases.

The sole thrust of his argument is that the "new lar-

ceny" doctrine "which allows a Maryland court jurisdiction to prosecute for larceny where the goods were asported into Maryland from another state" from which they were originally stolen, under *Worthington v. State,* 58 Md. 403, and *Hamilton and Fletcher v. State,* 12 Md. App. 91, should not be extended by analogy to instances where a county line is crossed instead of a state line. He misperceives the pedigree of the doctrine. The application of the "continuing trespass" theory where the thief asported the stolen goods into another state or country grew, by analogy, out of the more ancient and universally accepted practice of applying that theory where the thief asported the stolen goods into another county, and not vice versa.

As this doctrine grew, the analogy was not from the state or national line to the county line but from the county line to the state or national line. The heart of the argument before the Court of Appeals in *Worthington* was whether the Maryland-West Virginia boundary was truly analogous to the boundary between Maryland counties or English counties or not. The resolution of that argument turned upon whether the common law could be deemed to be prevailing with equal vigor on both sides of the state line, just as it unquestionably prevailed with equal vigor on both sides of a county line.

Sir Matthew Hale in 1 *History of the Pleas of the Crown,* 507-508, wrote:

> "And that is the reason, that if A. steals the goods of B. in the county of C. and carry them into the county of D. A. may be indicted for larciny in the county of D. for the continuance of the asportation is a new caption; but if he be indicted of robbery, it must be in the county of C. where the force and putting in fear was, *de quo postea.*"

To like effect, is Serjeant Hawkins in his 1 *Pleas of the Crown,* 151 (8th Edition, 1824):

> "Sect. 52. It is certain, that he who steals my

goods in the county of B. and carries them to the county of C. may be indicted or appealed in the county of C. as well as that of B.; because the possession still continuing in me, every moment's continuance of the trespass is as much a wrong, and may come under the word *cepit* as much as the first taking; yet a pirate carrying the goods whereof he robbed me at sea into any county, cannot be indicted for felony there, because the original taking was not such a felony whereof the common law takes cognizance."

A somewhat fuller exposition of the same principle is found in 2 East, *Pleas of the Crown*, 771-772:

"The offences of larceny and robbery, like all others, must be tried in the same county or jurisdiction wherein they were committed. In ascertaining which it is necessary to advert to two leading principles from which certain deviations which will be noticed are exceptions.
1. That the possession of goods stolen by the thief is a larceny in every county into which he carries the goods; because the legal possession still remaining in the true owner, every moment's continuance of the trespass and felony amounts to a new caption and asportation. And therefore if one steal goods in the county of A. and carry them into the county of B. he may be indicted or appealed of larceny in the latter county; though he can only be charged with robbery in the county where the force or putting in fear was."

The American authorities are unanimous in subscribing to this settled principle of the common law. See 50 Am. Jur. 2d, *Larceny*, Sec. 114—"Goods stolen in one county or district and taken to another," at p. 290:

"It is the general rule that crimes are to be

prosecuted in the county in which they were committed. However, it has been noted that one of the common-law incidents of simple larceny is that it is ambulatory in nature, and the courts often say that simple larceny is a continuing offense while the thief retains possession of the stolen goods, or that there is a continuing trespass and asportation every moment he does so pursuant to the felonious intent. Accordingly, it is settled that a person committing a simple larceny may be prosecuted not only in the county in which he originally steals the property, but in any county into which he subsequently carries it with a continuing felonious intent to make it the subject of larceny."

Clark and Marshall, *Law of Crimes* (6th Edition) states the same principle at p. 745:

"If a man steals property he commits a trespass, and he is guilty of a continuous trespass and asportation during every moment in which he retains possession. 'The doctrine of the common law is that the legal possession of stolen goods continues in the owner, and every moment's continuance of the trespass and felony amounts in legal consideration to a new caption and asportation.' Upon this theory, a person stealing goods in one county or state and carrying them into another is deemed guilty of larceny in any county or state where he may carry them."

Although all of the cases reach the same result, there is some confusion in stating the reason for the rule. Some cite the "continuing trespass" or "new larceny" theory. *State v. Johnson,* 38 Ark. 568; *Ferrill v. Com.,* 1 Duv. 153 (Ky.); *Watson v. State,* 36 Miss. 593. Some feel that it was a rule adopted for administrative convenience in bringing the thief to his punishment. *LaVaul v. State,*

40 Ala. 44; *Com. v. Uprichard,* 3 Gray 434 (Mass.);
*Simmons v. Com.,* 5 Binn 617 (Pa.). 2 Wharton, *Criminal
Law and Procedure* (Anderson Edition), Larceny, Sec.
484—"Larceny as a continuing offense," states at pp.
141-142:

> "When the defendant commits larceny in one
> county, and in continuation of his unlawful pur-
> pose, takes the property out of the county, the
> offense is regarded as continuing. The defendant
> is deemed guilty of larceny in every county into
> which he carries the property. No distinction is
> made in the application of this rule to property
> which is the subject of larceny because of stat-
> ute rather than common law.
> The reason for the rule set forth above is some-
> what obscurely stated in the cases, but it is suf-
> ficiently clear that one of the reasons was that
> by bringing the stolen goods into the county,
> the thief committed a new act of caption and as-
> portation in that county, which constituted a
> new larceny in such county and was punishable
> there as such. Another reason ascribed to such
> rule in the case of counties is that no matter
> in what county the prosecution is had the same
> general law of the realm is applicable to the
> punishment of the thief, and a conviction in one
> county would be a bar to a second conviction
> in another. It has also been pointed out that in
> the cases involving two counties of the same sov-
> ereignty the same law is violated, the same
> punishment is due, the rules of evidence and the
> law governing the proceedings are the same, and
> the question involved is merely a question as to
> where the trial shall be had, and wherever the
> trial is had, it is the same and the result is the
> same."

See also Annotation, "Person who steals property in
one state or country and brings it into another is sub-

ject to prosecution for larceny in latter," 156 A.L.R. 862, 864-865. Whether basing it upon the "new larceny" theory or upon the "administrative convenience" theory, the American decisions are of a single voice in reaching the same result. *Lucas v. State,* 62 Ala. 26; *Kidd v. State,* 83 Ala. 58; *People v. Mellon,* 40 Cal. 648; *State v. Cummings,* 33 Conn. 260; *Brown v. United States,* 35 App. D. C. 548; *State v. Underwood,* 49 Me. 181; *Com. v. Dewitt,* 10 Mass. 154; *Com. v. Hayes,* 140 Mass. 366; *Morissey v. People,* 11 Mich. 327; *Johnson v. State,* 47 Miss. 671; *Moore v. State,* 55 Miss. 432; *State v. Brown,* 8 Nev. 208; *Haskins v. People,* 16 N. Y. 344; *State v. Margerum,* 9 Baxt 362 (Tenn.); *Clark v. State,* 23 Tex. App. 612; *Strouther v. Com.,* 92 Va. 789; *Dunlavey v. Com.,* 184 Va. 521; *Com. v. Rand,* 7 Met 475 (Mass.); *State v. LeBlanch,* 31 N.J.L. 82; *People v. Sing,* 42 Cal. App. 385; *Tucker v. State,* 100 Fla. 1440; *Lee v. State,* 64 Ga. 203; *Schultz v. Lainson,* 234 Iowa 606; *Runyon v. Morrow,* 192 Ky. 785; *State v. Arndt,* 143 S.W.2d 286 (Mo.); *State v. Kief,* 12 Mont. 92; *State v. Meeks,* 25 N. M. 231; *State v. Daniels,* 119 Wash. 557.

When the appellant Lowe perpetrated three larcenies in Prince George's County and then proceeded to carry the stolen goods across the line into Charles County, it is beyond dispute that he thereby committed indictable larcenies in Charles County. The indictments were, therefore, proper and jurisdiction was, therefore, properly in the Circuit Court for Charles County to bring him to trial upon those indictments.

Both appellants contend that they were denied due process of law because the trial judge who reviewed the validity of the search warrant was the very judge who had issued that warrant in the first instance. Under Maryland Rule 1085, the equivocation of the appellants below would deny them the right to appellate review upon the question. After bringing to the attention of the court the fact that the judge's own warrant would be before him for review, the appellants' counsel clearly stated:

"We are not asking for a disqualification. I want that to be made clear but I want to leave that to the determination of the Court whether it can properly act in this case, Your Honor."

The court replied:

"Well, I feel that I am not so wedded to a search warrant that I have to sign, wedded to its perfection and absolute validity that if valid legal grounds are pointed out to me to show that the search warrant is defective that I couldn't rule in favor of it being defective. So I will not disqualify myself on that grounds."

No objection was taken to the court's action.

In no event, however, could the appellants prevail upon the merits. Although involving the impact of knowledge of a confession upon the judge in his capacity as the fact finder, the broad analysis of the confidence which our system of jurisprudence vests in the trial judge—an analysis that "goes to the very marrow of the role, function, and capacity of the judge in our legal system"— made by the Court of Appeals in *State v. Hutchinson*, 260 Md. 227, would indicate that, absent a showing of bias or prejudice, the mere fact that a judge issued the warrant would not preclude him from sitting either at a suppression hearing dealing with that warrant or at the trial upon the merits. The language of the Court of Appeals, at 233, is significant:

"The rationale of the opinion of the Court of Special Appeals in reversing the judgment of the trial judge in this case leads to but one conclusion and that is that in no instance where a trial judge hears a pretrial motion to suppress evidence could he try the case on its merits."

Although only implicit in the Maryland case law, the issue has been resolved directly and explicitly that a judge

is not disqualified from later participation in a case, even where the suppression of physical evidence is the key issue, by virtue of the fact that he issued the search and seizure warrant. *Waupoose v. State,* 174 N.W.2d 503, 504 (Wisc. 1970) ; *Arnold v. Commonwealth,* 421 S.W.2d 366, 366-367 (Ky. 1967) ; *State ex rel. French v. Hendricks Superior Court,* 247 N.E.2d 519, 525 (Indiana 1969) ; *State v. Smith,* 273 A. 2d 68, 78 (N.J. 1971) ; *State v. Toce,* 269 A. 2d 421, 422-423 (Conn. 1969) ; *Irwin v. State,* 441 S.W.2d 203, 208-209 (Texas 1968).

The final contention of the appellants is that the evidence was legally insufficient to sustain the convictions. They argue that it was insufficient in four regards :

(1) That it did not resolve a fatal variance between the *allegata* and the *probata* of ownership;

(2) That it did not establish the value of the stolen articles;

(3) That it did not show generally that the appellant Peaper was in receipt of stolen goods; and

(4) That it did not corroborate the testimony of an admitted accomplice.

We note initially that the alleged variance between the allegations and the proof of ownership is an issue of relevance only to the appellant Lowe. The convictions of the appellant Peaper were for receiving stolen goods. Receiving stolen goods is not a crime against possession. "Thus in receiving, unlike larceny, the ownership of the goods is not an essential element of the offense, although the fact that they were stolen is. Thus it is not necessary that the ownership of the goods received be proved precisely as alleged; proof that they were stolen goods is sufficient." *Jackson v. State,* 10 Md. App. 337, 348-349.

The "1967 Ford tractor, serial no. C-176158-7FC7," was alleged to have been taken from "Martin and Gass, Inc., a body corporate." The proof established that the tractor belonged to the Fairfax Equipment Rental Corporation, a subsidiary of Martin and Gass, Inc., and had been leased back to Martin and Gass, Inc., by Fairfax.

The "Ingersoll Rand gas driven air compressor, serial no. 34124," was alleged to have been taken from "Del May, Inc., a body corporate." The proof established that the air compressor was owned by the Revel Tool and Equipment Company and, at the time of the theft, was on lease to Del May, Inc. The laying of possession in the lessees of the two pieces of equipment is perfectly proper. Larceny is a crime against possession. The lessees—holding their special interest in the property—were validly in possession. As we said in *Melia and Shelhorse v. State,* 5 Md. App. 354, at 360-361:

> "Since larceny is a crime against possession, *Brown v. State,* 236 Md. 505; *Wharton's Criminal Law and Procedure* (Anderson) § 464, an allegation of the ownership of the property alleged to have been stolen is a necessary requisite in a larceny indictment and proof of ownership as laid in the indictment is an essential factor to justify a conviction, *Anderson v. State,* 3 Md. App. 85. It is well settled that ownership may be laid in the real owner—general interest—or in the person in whose possession the goods were at the time of theft—special interest. *Petrey v. State,* 239 Md. 601, 603. And it is not necessary to state the nature of the interest; the property may be described as the goods of the owner or as the goods of the person having possession. 32 Am. Jur., Larceny, § 114, p. 1067. So an allegation that a person is the owner may be sustained by proof that he has either a general or a special interest."

The "Tractor, Case, backhoe and front end loader combination, serial no. 2062463," was alleged to have been taken from the "Dimeglio Construction Company, Inc., a body corporate." The proof established precisely that, Joseph Julian Dimeglio, a one-third owner of the corporation along with his mother and father and the secretary-treasurer of the corporation, testified at length

about this piece of equipment belonging to the corporation, about its location at the time it was stolen, about its value and about its recovery. Upon being questioned as to whether he checked the serial number at the time of recovery, he replied in the affirmative. He was asked the result of that check and he replied, "Yes, it was our piece of equipment." The appellants seize upon that unspecified use of the word "our". To argue that it establishes any variance at all—let alone a fatal variance —is utterly frivolous. The antecedent of the pronoun "our" is clearly, by any intelligent reading of the whole context, the "Dimeglio Construction Company, Inc."

The second regard in which the appellants contend that the evidence was legally insufficient is with respect to the fair market value of the stolen pieces of equipment. They seize upon some gratuitous discussion in the course of the rendering of the judge's opinion and argue from that that the judge was content to take judicial notice of the value of the stolen goods, relieving the State of all burden of proof with respect thereto. That simply is not what happened. In the course of summing up the evidence, the trial judge, in this regard, said the following:

> "We also think that the proof of value had been established—has been established in these cases. Certainly, sufficiently to indicate that in each case the value of the items we are dealing with exceeds $100. I believe the Court of Appeals has said in one case where the items are brought into Court and laid before the jury, if these items that the jury may well be acquainted with, that an omission in the testimony as to that omission as to the testimony of the value would not be fatal, that the jury might draw their own conclusions as to value.
> We have pictures of the items involved in these cases and I might say that the—this member of the Court being reared and raised on a farm and familiar with such items as we are dealing

with, has no doubt that the items are, in each case, in excess of the value of $100."

His initial statement that he thought that "the proof of value had been established" was clearly based on the testimony of Mr. Dimeglio that the fair market value of the backhoe and front end loader was $10,000; the testimony of Mr. Drury that the fair market value of the air compressor was "about $2,000 to $2,400"; and the testimony of Mr. Nieman that the fair market value of the tractor was approximately $2,000.

The appellant Peaper next contends that the evidence was legally insufficient to establish that she herself was ever in illegal receipt of the stolen goods. The land records for Charles County revealed that she was the owner of the 25 acre farm on which the stolen pieces of machinery were found. The testimony of the accomplice, her estranged son-in-law Dennis Sizemore, was that the pieces of stolen equipment had been there on the farm where the appellant Peaper resided for periods of 10 months, 12 months and 14 months, respectively, prior to being recovered. It was furthermore the testimony of Sizemore that it was the appellant Peaper who first suggested and planned the three larcenies, with the object in mind of making certain improvements on the farm itself. Sizemore further testified that on at least one occasion he observed the appellant Peaper using the stolen tractor for farming purposes. Q.E.D.

The final contention of both appellants is that the evidence was legally insufficient to corroborate the testimony of an admitted accomplice, Dennis Sizemore. It was, to be sure, Sizemore who provided the bulk of the incriminating testimony. He testified as to the initial planning sessions within the family group, of which he was then a part, along with both appellants and their daughter (his then wife) Christine. He testified as to how the appellant Peaper suggested that it would be "relatively simple" to obtain needed material for enlarging the house from numerous housing projects in

the area at night and how it would be easy to pick up needed equipment from unguarded job sites in the area at night. He testified as to how the appellant Lowe spotted the backhoe and front end loader sitting on the side of a road one day as they were riding to work and as to how the next day Lowe drove the piece of equipment onto the farm. He testified as to participating with Lowe in the larcenies of the Ingersoll Rand air compressor and Ford tractor and as to how he and Lowe together returned the stolen items to the farm. He testified as to the anger, on one occasion, displayed by Peaper toward Lowe for having been foolish enough to have driven the stolen tractor down the road on a Sunday afternoon.

Sizemore's testimony, of course, needed corroboration. By way of minimal corroboration, one James Cloud described a conversation which he overheard between the appellant Lowe and another person in October, 1969. Lowe related to that other individual laughingly how he had equipment which he "requisitioned at a good price." Cloud further recalled that Lowe stated, "When this wears out, I will be able to requisition another at the same price."

The execution of the search and seizure warrant on July 25, 1970, is the critical evidence in this regard. Simply to mention the recovery of the three items of heavy equipment from the farm owned by the appellant Peaper and occupied by both appellants is to demonstrate the amplitude of the corroboration of the testimony of the accomplice.

The appellants also complain that the trial judge did not permit them to introduce evidence of the conviction of the accomplice Sizemore on bastardy charges in order to impeach his credibility. The trial judge was absolutely correct in not permitting this evidence to be admitted since it does not go to the question of credibility. See Md. Code, Art. 35, Sec. 10.

*Judgments affirmed; appellant Rachel Lee Peaper to pay one-half of costs.*