549 A.2d 411

**Kenneth T. RUFFIN**

v.

**STATE of Maryland.**

**No. 72, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 3, 1988.

As Amended Dec. 13, 1988.

94

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Norman L. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Submitted before GILBERT, C.J., MOYLAN, and ROBERT M. BELL, JJ.

MOYLAN, Judge.

The interesting aspect of this case is the opportunity to observe the fundamentally different natures of the contrasting issues of Fourth Amendment applicability and Fourth Amendment satisfaction. The former is concerned solely with the coverage of the Fourth Amendment; the latter, with the merits of Fourth Amendment reasonableness. The former involves the very threshold of the entitlement to litigate; the latter involves the actual merits of that

litigation. What the searching policeman reasonably believes or reasonably does is immaterial to Fourth Amendment applicability; it is crucial to Fourth Amendment satisfaction.

The appellant, Kenneth T. Ruffin, was convicted in the Circuit Court for Montgomery County by Judge DeLawrence Beard, sitting without a jury, of 1) transporting a handgun in a vehicle, 2) possession of a handgun having an altered identification number, 3) possession of heroin with intent to distribute, 4) possession of a motor vehicle with defaced serial numbers, and 5) displaying license plates issued to another vehicle. Upon this appeal, he raises the following three contentions:

1. That Judge William M. Cave, presiding at a pre-trial suppression hearing, erroneously ruled that the appell' had no standing to contest the search of a stolen autoᵢ bile;

2. That the search of the automobile, for a variety of reasons, was unreasonable and, therefore, unconstitutional; and

3. That the evidence was not legally sufficient to support the conviction for transporting a handgun in a vehicle.

Our disposition of the appellant's first contention *ipso facto* resolves the second as well. At approximately 5:30 a.m. on July 3, 1986, an officer on routine patrol in the 8200 block of Georgia Avenue observed a suspicious-looking individual (not the appellant) entering a Volvo automobile parked in front of a pool hall. The officer stopped the individual and began inspecting the interior of the Volvo. At that point, the appellant came out of the pool hall and demanded to know what the officer was doing in his car. The subsequent search of that car yielded the physical evidence that was indispensable to proof of all counts on which the appellant was indicted. The appellant timely moved to exclude the physical evidence on the grounds that the automobile search was unreasonable under the Fourth Amendment. At the suppression hearing before Judge

William M. Cave, the State challenged the appellant to show standing:

"In this case the State is not going to concede that Mr. Ruffin had an expectation of privacy in the car from which the heroin and the handgun were seized. The car was a stolen vehicle, and the State is going to ask him to prove that he had an expectation of privacy."

When a timely challenge to standing is raised, the procedure for litigating that challenge is clear. As we explained in *Thompson v. State*, 62 Md.App. 190, 202–203, 488 A.2d 995 (1985), *cert. denied*, 303 Md. 471, 494 A.2d 939 (1986):

"[I]t is clear that there is an initial burden on the prosecution to raise the challenge to standing. If the State fails to raise a timely challenge and the court goes on to reach the Fourth Amendment merits, the State will be estopped from raising the challenge at a later stage. If the prosecution does raise the challenge, however, by even the most informal of oral pleadings, it is then clear that the burden of proof is allocated to the defendant to show his standing. The State has no obligation to show nonstanding."

At the suppression hearing, it was indisputably established that the Volvo that was searched was a stolen car. The appellant himself does not take serious issue with this. The Volvo belonged to Arne Drud of Arlington, Virginia. The car was stolen from Mr. Drud approximately one month before it was found in the possession of the appellant. It was, moreover, immediately apparent that the car was probably stolen. When the police first saw the car, they observed that the ignition cylinder was not secured. One serial plate that should have been riveted into place was simply hanging loose in place, with its four corners having been snipped. Yet a second serial number under the hood had had its rivets snipped off and was simply screwed into place. A third "secret serial number" had been drilled out and was gone completely. The license tags on the car were not the tags that had been issued to it but were tags that had been issued for a different, 1975 Volvo owned by the

appellant and transferred by the appellant to the stolen car. The serial numbers that were loosely attached to the stolen Volvo did not belong to it but had been transferred there from the appellant's 1975 Volvo. Judge Cave's findings of fact in this regard were abundantly supported by the evidence and were, therefore, not clearly erroneous:

"[T]he court finds sufficient facts that it wasn't even his car. It was a stolen car, and he has absolutely no right or expectation of privacy. He may expect it, but the constitution says that he is not entitled to have an expectation to privacy in a stolen car.

For all these reasons, but primarily the latter, I suppose, the motion to suppress will be denied." [1]

---

**1.** The appellant was actually charged with the theft of the automobile in this case, but Judge Beard granted his motion for a judgment of acquittal with respect to that count. The solace the appellant now seeks from that judgment of acquittal is simply not there to be found. In the first place, the propriety of Judge Cave's ruling at the suppression hearing will be assessed exclusively on the basis of what was before Judge Cave and would not, in any event, be influenced by the hindsight of what subsequently was developed at the trial upon the merits.

At a suppression hearing, moreover, it is only necessary for the State, even when it has the burden of persuasion on a proposition, to persuade the hearing judge by a bare preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The fact that at the trial upon the merits the State did not persuade the fact finder of guilt beyond a reasonable doubt would by no means preclude the possibility that there had been persuasion by the requisite preponderance of the evidence standard.

Proving that a car was stolen for purposes of defeating standing, furthermore, is far easier than proving that a theft of the automobile occurred in the State of Maryland. The possibility that this theft originally occurred in Virginia or in the District of Columbia would at least complicate, even if not necessarily defeat, the likelihood of a theft conviction in Maryland. *But see Worthington v. State*, 58 Md. 403, (1882); *Hamilton and Fletcher v. State*, 12 Md.App. 91, 277 A.2d 460, *aff'd.* 265 Md. 256, 288 A.2d 885 (1972); *Peaper and Lowe v. State*, 14 Md.App. 201, 286 A.2d 176 (1972). The transcript reveals, moreover, that the motion for judgment of acquittal was granted as to the automobile theft count for the reason that the State had failed to prove that the stolen automobile had any value. That does not

The appellant does not, and could not, take issue with the clear proposition of law that a thief has no standing to object to the search of a stolen automobile. We first considered this issue in *Palmer v. State,* 14 Md.App. 159, 286 A.2d 572 (1972), and held unequivocally, at 14 Md.App. 169, 286 A.2d 572:

"Both the overwhelming weight of authority and, we feel, the better reasoning are represented by the cases which hold squarely that the thief has no 'standing' in the stolen automobile. *Kaufman v. United States,* 323 F.Supp. 623 (E.D. Missouri 1971); *Williams v. United States,* 323 F.2d 90 (10th Cir.1963); *State v. Pokini* [45 Haw. 295] 367 P.2d 499 (Hawaii, 1961); *Slyter v. State* [246 Miss. 402], 149 So.2d 489 (Mississippi, 1963); *Harper v. State* [84 Nev. 233], 440 P.2d 893 (Nevada 1968); *State v. Edmonds,* 462 S.W.2d 782 (Missouri 1971); *Meade v. Cox,* 310 F.Supp. 233 (W.D.Virginia 1970). Even more compelling than the precedents from our sister jurisdictions, however, is the inherent logic of the proposition. No valuable social purpose could conceivably be served by extending the protection of the Fourth Amendment to a thief in the enjoyment of the stolen automobile." (Footnote omitted).

Judge Wilner addressed the same issue in *Graham v. State,* 47 Md.App. 287, 295, 421 A.2d 1385 (1980):

"This Court faced a similar issue in *Palmer v. State,* 14 Md.App. 159 [286 A.2d 572] (1972), where the defendant sought to suppress narcotics paraphernalia found in the stolen car he was driving at the time of his arrest. We concluded that '[n]o valuable social purpose could conceivably be served by extending the protection of the Fourth Amendment to a thief in the enjoyment of the stolen automobile.' *Id.* at 169 [286 A.2d 572]. Other jurisdic-

---

derogate in any way from the finding that the appellant was riding around in a stolen car.

tions, both before and after *Rakas [v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ], have reached similar conclusions. *See, e.g., State v. Thomas,* 595 S.W. 2d 325 (Mo.App.1980); *Khaalis v. United States,* 408 A.2d 313 (D.C.1979), *cert. den.* 444 U.S. 1092 [100 S.Ct. 1059, 62 L.Ed.2d 781] (1980); *State v. Abordo* [61 Haw. 117], 596 P.2d 773 (Hawaii 1979); *State v. Purcell,* 586 P.2d 441 (Utah 1978); *Mack v. State,* [177 Ind.App. 537,] 380 N.E.2d 592 (Ind.App.1978); *People v. Pearson* [190 Colo. 313], 546 P.2d 1259 (Colo.1976). Although a few courts have reached the opposite result, *e.g. Barr v. State,* 531 P.2d 1399 (Okla.Cr.App.1975), *Cotton v. United States,* 371 F.2d 385 (9th Cir.1967), it is significant that in *Rakas* the Supreme Court characterized such holdings as 'inexplicable.' *Rakas, supra,* 439 U.S. at 141, n. 9 [99 S.Ct. at 429, n. 9].

We therefore conclude that appellant was not deprived of any Constitutionally protected right by the search of the moped or the backpack—that, in pre-*Rakas* terms, he had no 'standing' to object to either of these searches." (Footnote omitted).

■ The ingenious argument that is seemingly being put forth by the appellant is that although the suppression hearing judge had ample evidence to support his conclusion that the car was stolen and that the appellant, based not only upon possession but upon his elaborate efforts to conceal the identity of the car by substituting his own tags and serial number for the originals, was in all likelihood the thief, the policeman who conducted the warrantless automobile search did not have such substantial evidence. Thus, the argument is that even if the suppression hearing judge could reasonably have concluded that the appellant lacked standing in the automobile, the searching policeman could not.

In support of this argument, the appellant urges that even though Judge Cave knew that the automobile had been

stolen from Arne Drud, the policeman at the time of the search had no such knowledge. He urges further that although there were suspicious circumstances with respect to the ownership of the automobile just before the initiation of the search—the "punched out" ignition, the loosely attached serial numbers, and the equivocation of the appellant in twice asserting but also twice denying ownership of the car—those doubts were dispelled moments into the search. He suggests that notwithstanding the fact that the police may have had a right to make a preliminary inspection of the car in order to determine who owned it, when that inspection yielded the appellant's driver's license attached to the sun visor and when a radio check of the license tags indicated that the car was registered to the appellant, no further search of the car was justified.

The bottom line of the argument is that the evidence available to the policeman at the time of the automobile search was not such as to permit a reasonable conclusion that the car was stolen and that the appellant, therefore, lacked standing to object to its search. The fatal flaw in that argument is that the policeman is not called upon to determine a suspect's standing to object. Standing is an exclusively adjudicative issue to be determined by a judge in a courtroom on the basis of evidence adduced then and there in the courtroom. It is not an investigative issue to be determined by a policeman on the street on the basis of facts known to the policeman at that time and place.

As a threshold issue, standing determines only the entitlement to litigate the Fourth Amendment merits. It has nothing to do with the merits themselves. A properly disciplined approach to any search and seizure problem involves the asking of two very fundamental and conceptually distinct questions:

1. IS THE FOURTH AMENDMENT EVEN APPLICABLE?

2. HAS THE FOURTH AMENDMENT BEEN SATISFIED?

More important, perhaps, than the two fundamental questions themselves is the direction that is lurking there between them: "Do not go on to question # 2 unless the answer to question # 1 is, 'Yes.'" If the Fourth Amendment is, indeed, applicable—in that it covers the place searched, it covers the person of the searcher, and it involves a Fourth Amendment protection of the defendant—then we go on to the merits. The thrust of the Fourth Amendment is that the police behave reasonably when they search and when they seize. When the Fourth Amendment is applicable, therefore, the reasonableness of the police conduct becomes an issue.

When, however, the Fourth Amendment is not applicable—either because it does not cover the place searched or does not cover, *e.g.*, a search by a private person or does not involve any Fourth Amendment protection owed to the defendant—the court does not reach the issue of the Fourth Amendment merits because those merits are immaterial. Where, for any number of reasons, the Fourth Amendment does not apply to a particular search or seizure, the question of whether the Fourth Amendment might or might not have been satisfied in some other world where it did apply is purely academic.

If we were dealing with the merits of Fourth Amendment satisfaction, then the reasonableness of what the policeman thought and of what the policeman did would be vitally important. The Fourth Amendment is, at its core, a commandment to government generally and to the police specifically to be reasonable when they search and when they seize. We assess that reasonableness, it logically follows, as of the moment of the search and seizure. That assessment, moreover, is of the set of facts as observed from the subjective [2] vantage point of the policeman, upon the events as

---

**2.** Although it does not involve an issue in this appeal, we add the cautionary note that the subjective-objective dichotomy here being discussed should not be confused with a closely related but very different subjective-objective dichotomy, wherein it is the objective appraisal of the court rather than the subjective appraisal of the officer that matters. In terms of establishing the pertinent data base, we are, as here, concerned with the facts as they appear to be from the subjective vantage point of the policeman as of the moment the policeman is called upon to act rather than the facts as they are ultimately found to be by the objective determination in the courtroom. With respect to that subjective data base, however, we still must make a determination as to the legal conclusions that can be distilled from that data. With respect to the legal significance, the

they reasonably appear to him to be at that moment. Even a productive search of a true culprit will not, by hindsight, be made reasonable if it lacked a reasonable predicate at the moment of its execution. Conversely, even a non-productive search of a true innocent will not, by hindsight, be made unreasonable if it was based upon a reasonable predicate such as probable cause. The satisfaction or the violation of the Fourth Amendment is measured not in terms of ultimate historical reality. It is measured rather in terms of the reasonableness of the police response to events as they subjectively[3] appear to be at the moment of the search or seizure itself. Those merits of Fourth Amendment satisfaction, however, are not what is before us in this case.

When we shift issues from that of Fourth Amendment satisfaction to that of Fourth Amendment applicability, our criteria for measuring change dramatically. The concern shifts from the merits of litigation to the entitlement to litigate. The focus shifts from the subjective viewpoint of the policeman to the objective appraisal of the trial judge. The timeframe shifts from the moment of search or seizure to the moment of the suppression ruling. The object of measurement shifts from reasonable appearances to historic reality. What finally matters shifts from what the policeman reasonably believed out on the street to what the suppression hearing judge ultimately knows in the courtroom.

Standing to object is simply one instance of Fourth Amendment applicability. It is the applicability of the Fourth Amendment protection to the person who seeks to litigate its violation. On this threshold issue, what the policeman knew and what the policeman did is of no moment. This is so because the standing issue has nothing to do with whether the Fourth Amendment was satisfied or violated. The only issue is whether the constitutional protec-

---

trial court and the appellate court do not rely upon the subjective conclusion of the policeman but rather make their own objective determination as to whether that data base would yield probable cause.

Thus, on the issue of Fourth Amendment reasonableness, the subjective perception of the policeman on the scene controls the selection of the pertinent facts to be appraised. We then, however, switch to the objective appraisal of the judge as to what legal conclusion should be drawn from those facts. We are in one gear for the selection of the data base; we then switch gears to make the legal assessment of that data base.

**3.** See footnote 2 above.

tion that was arguably violated was a constitutional protection enjoyed by the defendant or was a constitutional protection enjoyed by somebody else. One must possess a right before one is entitled to litigate the arguable violation of that right.

If in this case, for instance, the police, out of sheer malice, had taken Arne Drud's car apart with an acetylene torch, Arne Drud, were he the defendant, would certainly be entitled to complain. To hold that this appellant had no standing to object, however, is simply to hold that whatever the police did to Arne Drud's automobile is, starkly stated, none of the appellant's business. Since a thief has no Fourth Amendment protection in the enjoyment of a stolen automobile, the appellant had no entitlement to litigate the constitutionality of what the police did in or to Arne Drud's Volvo. What the police knew and what the police did, therefore, doesn't matter. We hold that Judge Cave was correct in ruling that the appellant had no standing to raise the Fourth Amendment merits.

The appellant's second contention is that, in a number of regards, the warrantless search of the Volvo was constitutionally unreasonable. Our disposition of the first contention quite obviously disposes of this contention as well. We are not remotely intimating that we think the warrantless automobile search was unreasonable. We are simply declining to make any gratuitous comment upon the Fourth Amendment merits, lest it erode the credibility of our holding that where the Fourth Amendment is inapplicable, the merits are immaterial.

The appellant's final contention is that the evidence was not legally sufficient to support his conviction for transporting a handgun in a vehicle. His argument is straightforward. When the police came upon the automobile that contained the handgun, it was stationary. No eyewitness actually saw the car in motion. Without evidence of motion, his argument runs, there was no proof that the handgun was actually *transported*, rather than simply deposited, in the automobile. The appellant conveniently ignores the splendid utility of circumstantial evidence.

When assessing the legal sufficiency of evidence, we take not only that version of the facts most favorable to the State but also all inferences that can reasonably be drawn therefrom. At 5:30 in the morning, the appellant was in a pool room. The car he was operating was parked in the street immediately outside. We do not find irrational the inference that he transported himself to the pool room in the car. With that inference flows the parallel inference that the gun which was contained in the car was transported there with him. We hold that Judge Beard's verdict in that regard was not clearly erroneous.

We are not unaware of *Thomas v. State,* 277 Md. 314, 353 A.2d 256 (1976) but find nothing incompatible between the holding there and our holding here. In that case, Thomas had been found guilty of driving a vehicle while impaired by the consumption of alcohol. The only evidence was that he was found in a parked automobile at an early morning hour and intoxicated. The Court of Appeals quite naturally found that that was not enough to give rise to the permitted inference that he had actually been driving the automobile while intoxicated. There was no suggestion that being found in the automobile in that location might not have given rise to the inference that he had at some earlier time driven the automobile to that location. What had to be inferred in that case was not simply the movement in space from some other place to another but also a precise sequence of events on the time line, that the intoxication had preceded the driving rather than come after it.

The necessary inference here requires no such precision and is, therefore, far easier to draw. Had the appellant here been charged with driving the automobile to the pool hall while drunk based simply upon the fact that the car was in front of the pool hall and he was found to be drunk, *Thomas v. State* would, of course, be dispositive. It would have been just as likely or even more likely that he became intoxicated after arriving at the pool hall rather than before driving there. It is the precision as to sequencing that rendered the factual predicate inadequate to support the inference in *Thomas.* Our looser inference of merely driving the automobile to the pool hall at some unspecified time uncorrelated to some other event is not thus flawed. There was no sequence that had to be established here.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.